**NO. 16-6570**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**JOANNE P. RUSS,**

**Plaintiff-Appellant,**

**v.**

**MEMPHIS LIGHT, GAS & WATER DIVISION**

**Defendant-Appellee.**

---

**APPELLANT'S BRIEF**

---

On appeal from the United States District Court for the Western District of Tennessee Western Division, the Honorable Samuel H. Mays.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

_s/Kathleen L. Caldwell_
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
*Attorneys for Appellants*

**NO. 16-6570**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**JOANNE P. RUSS,**

**Plaintiff-Appellant,**

**v.**

**MEMPHIS LIGHT GAS & WATER DIVISION,**

**Defendant-Appellee.**

---

**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

---

Appellant Joanne P. Russ, pursuant to 6th Cir. R. 26, makes the following disclosures:

A.    Are said parties a subsidiary or affiliate of a publicly-owned corporation?

        No.

        If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

        None.

B.    Is there a publicly-owned corporation not a party to the appeal that has a financial interest in the outcome?

i

No.

If the answer is YES, list the identity of such corporation and the  nature of the financial interest.

None.

*s/ Kathleen L. Caldwell*
Kathleen L. Caldwell

April 3, 2017

# **TABLE OF CONTENTS**

Disclosure of Corporation Affiliation……………………………..    i

Table of Contents..……………………………………………    iii

Table of Authorities…………………………………………….    v

Statement of Subject Matter and Appellate Jurisdiction………….    1

Statement as to Oral Argument…………………………………    1

Statement of Case……………………………………………    2

    1.    Nature of the Case……………………………….    2

    2.    Course of the Proceedings Below…………………….    2

    3.    Disposition Below……………………………….    6

Statement of Facts……………………………………………    7

Summary of Argument………………………………………    15

Argument……………………………………………………    16

    I.    Whether the District Court Erred in Granting
        Summary Judgment on Russ' Claims of Retaliation,
        for Hostile Environment and for Denial of
        Accommodation Request for a Later Start Time………    16

    II.    Whether Request for Additional Staff Was a
        Reasonable Accommodation…………………………..    23

    III.    Whether the District Court's Ruling on Retaliation
        Permeated the Trial, and Lead to Numerous
        Evidentiary Problems…………………………………..    24

Conclusion………………………………………………….. 28

Certificate of Compliance…………………………………. 29

Certificate of Service………………………………………. 30

Designation of Record……………………………………… 31

# TABLE OF AUTHORITIES

**CASES:**                                                          **PAGE**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S. Ct. 2505 (1986)………………   17

Appalachian Res. Dev. Corp. v. McCabe,
    387 F. 3d 461 (6th Cir. 2004)……………………………   15

Bratten v. SSI Services, Inc.,
    185 F.3d 625 (6th Cir. 1999)…………………………..   22

Celotex Corp. v. Catrett,
    477 U.S. 317 106 S. Ct. 2548 (1986)………………   16

Davis v. Sodexbo,
    157 F.3d 460 (6th Cir. 1998)………..……..…………   19

Donald v. Sybra, Inc.,
    667 F.3d 757 (6th Cir. 2012)……………………………   17

Doreen v. Battle Creek Health Sys.,
    187 F.3d 595 (6th Cir. 1999)……………………………   17

Entertech Elec. Inc. v. Mahoning County Com'rs,
    85 F.3d 257 (6th Cir. 1996)…………………………..   17

GE v. Joiner,
    522 U.S. 136, 118  S. Ct.
    512, 139 L. Ed. 2D 508 (1997)…………………………   23

Grace v. USCAR,
    521 F.3d 655 (6th Cir. 2008)……………………………   21

Hughes v. Vanderbilt University,
    215 F.3d 543 (6th Cir. 2000)………………….…………   15

Int'l Union v. Cummins, Inc.,
    434 F.3d 478 (6th Cir. 2006)…………………………..  15

Johnson v. Econ. Dev. Corp.
    241 F.3d 501 (6th Cir. 2001)……………….……….  16

Klepper v. First American Bank,
    916 F.2d 377 (6th Cir. 1990)………………………..  16

Ling v. Twp. of Richland,
    2015 U.S. Dist. LEXIS 139957
    (ED Mich. 2006……………….………………………  19

Logan v. Denny's Inc.,
    259 F.3d 558 (6th Cir. 2001)…………………………  16

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348, 1356 (1986)………..…  16

McCombs v. Meijer, Inc.,
    395 F.3d 346 (6th Cir. 2005)…………………………..  23

Moore v. Philip Morris Cos.,
    8 F.3d 335 (6th Cir. 1993)……………………………  17

Old Chief v. U.S,
    117 S. Ct. 644, 136 L. Ed. 2D 574 (1997)……………  23

Rumler v. Dep't of Corr.,
    546 F. Supp. 2d 1334 (USDC FLA. 2008)……………  20

Spengler v. Worthington Cylinders,
    615 F.3d 481 (6th Cir. 2010)……………………………  19

Taylor v. Geithner,
    703 F.3d 328 (6th Cir. 2013)……………………………  15

Wade v. Knoxville Utilities Bd.,
    259 F.3d 452, 460 (6th Cir. 2001)……………………. 16

US v. Johnson,
    440 F.3d 832 (6th Cir 2006)………………………….. 23

Younis v. Pinnacle Airlines, Inc.,
    610 F.3d 359 (6th Cir. 2010)……………………….. 18, 19, 20

**STATUTES:**

28 U.S.C. §1291………………………………………………… vii

28 U.S.C. §1331………………………………………………… vii, 18

42 U.S.C. §2000e…............................................................ 2

42 U.S.C. §1981a………………………………………………… 20

42 U.S.C. §12101 et seq………………………………………… 20

42 U.S.C. §12117 *et seq*...........................................…. 2

**RULES:**

Fed. R. Civ. P. 56………………………………………….. 15, 16

Fed. R. App. P. 34………………………………………….. vii

Fed. R. Civ. P. Rule 56(a)
Sixth Cir. Rule 34………………………………………….. vii

Fed. R. Evid., Rule 403……………………………………… 25

**TREATISES:**

Charles A. Wright, et al, Federal Practice and Procedure
§2727 (2d Ed. 1998)…………………………………………. 16

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had original jurisdiction over this civil action pursuant to 28 U.S.C. §1331, inasmuch as the action arises under the Constitution and laws of the United States.

Appellate jurisdiction is granted to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. §1291 inasmuch as the appeal is taken from a final decision of a district court.  (Order entered April 1, 2016).  (Order, R. 111, Page ID #1607).  And from the final judgment entered October 6, 2016).  (Judgment, R. 151, Page ID #1961, and the Order on Jury Verdict entered October 6, 2016).  (Order, R. 150, Page ID #1960).  Notice of Appeal was filed timely, on October 19, 2016.  (Notice of Appeal, R. 152, Page ID #1962).

This appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Oral argument is needed.  The appeal is not frivolous.  There remain issues not authoritatively decided elsewhere.  Because the facts of this case are somewhat convoluted and complex, it is difficult to adequately present the facts and legal arguments in the briefs.  The decisional process will be significantly aided by oral argument.  Appellant relies on:  F.R.A.P. 34, and 6 Cir. R. 34.

## STATEMENT OF THE CASE

1.  Nature of the Case:

This action alleges discrimination on the basis of disability in violation of the Americans with Disabilities Act, as amended, (ADAA) 42 U.S.C. §12117 et seq., and for retaliation, in violation of the ADAA and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e.

Joanne P. Russ ("Russ") contends that her employer, Memphis, Light Gas & Water Division ("MLGW"), discriminated against her on account of her disabling condition; that she was at all relevant times a qualified individual with physical and mental impairments which substantially limited her in one or more major life activities, or who was regarded by her employer as disabled.  MLGW discriminated against her in terms and conditions of her employment, refused her reasonable requests for accommodation, retaliated against her, and put such pressure on her that she reasonably feared she would have another stroke and/or would die.  She applied for retirement, which was a constructive discharge.

2.  Course of the Proceedings Below:

Russ filed her Complaint against MLGW on May 16,  2014.  Complaint, R. 1, Page ID #1.  On June 24, 2014, MLGW filed its Motion to Strike Certain Portions of the Plaintiff's Complaint.  Motion to Strike, R. 17 Page ID #51.  On June 25, 2014, MLGW filed its Answer to Complaint.  Answer, R. 18, Page ID #59.

On July 17, 2014, MLGW filed its Notice of Correction to its Motion to Strike. Notice of Correction, R. 23, Page ID #76.  On July 18, 2014, MLGW filed its Amended Motion to Strike Certain Portions of the Plaintiff's Complaint.  Amended Motion to Strike, R. 24, Page ID #79.  On July 30, 2014, Russ filed her Response in Opposition to Amended Motion to Strike.  Response in Opposition, R. 30, Page ID #98.

On August 18, 2014, MLGW filed its Motion to Dismiss.  Motion to Dismiss, R. 31, Page ID #109.

On September 22, 2014, the court entered its Order Granting Plaintiff's Motion for Leave to Amend Complaint.  Order, R. 35, Page ID #139.  (Note:  the Docket Sheet omits the Motion for Leave to Amend, and includes only Russ' Motion to Amend/Correct Proposed Order.  Motion to Amend/Correct Proposed Order, R. 34, Page ID #124).

On September 23, 2014, Russ filed her Amended Complaint. Amended Complaint, R. 36, Page ID #140.

On September 25, 2014, Russ filed her Response to MLGW's Motion to Dismiss. Response, R. 37, Page ID #153.

On November 3, 2014, MLGW filed its Answer to Amended Complaint.  Answer, R. 38, Page ID #161.

On December 17, 2014, the Court entered its Order Denying Motion to Strike and Denying Motion to Dismiss.  Order, R. 39, Page ID #174.

On January 23, 2015, Russ filed her Notice of Expert Witness Designations. Notice, R. 48, Page ID #196.  On April 17, 2015, MLGW filed a Motion in Limine to Exclude Testimony of Dr. Robert McEwan, M.D., and Dr. Maher Ghwaji, M.D.  Motion in Limine, R. 55, Page ID #209.  Russ filed her Response on April 28, 2015.  Response, R. 56, Page ID #216.  On May 18, 2015, MLGW filed its Reply to Russ' Response to Motion to Exclude Experts.  Reply, R. 59, Page ID #223.

On November 6, 2015, MLGW filed its Motion for Summary Judgment.  Motion for Summary Judgment, R. 81, Page ID #316.  Russ filed her Response in Opposition to Motion for Summary Judgment on January 25, 2016.  Response in Opposition, R. 91, Page ID #1134.  On January 25, 2016, Russ filed her Notice of Filing Deposition and Exhibit Excerpts in Support of her Memorandum in Opposition to Summary Judgment. Notice, R. 92, Page ID #1234; and R. 93.  MLGW filed its Reply on February 11, 2016. Reply, R. 94, Page ID #1475.

On February 24, 2016, the district court entered its Order (granting in part and denying in part) MLGW's Motion in Limine.  Order, R. 95, Page ID #1498.

A Joint Proposed PreTrial Order was submitted by the parties on April 1, 2016. Proposed PreTrial Order.  R. 99, Page ID #1527.

MLGW thereafter filed six Motions in Limine (Excluding Oracle Project, Excluding Fictional Manager Position, Excluding Requests for Additional Staff, Excluding Alleged 2009 ADA Accommodation, Excluding Non-ADA Allegations, and

Excluding Pre and Post "Relevant Period" allegations).  Motions in Limine, R. 100, 101, 102, 103, 104, and 105), Page ID #'s 1564, 1569, 1574, 1579, 1584, and 1590, respectively.

On April 8, 2016, Russ filed her Responses to MLGW's Motions in Limine. Responses, R. 108, Page ID #1600.

On April 21, 2016, the court entered its Order Granting in Part and Denying in Part Motion for Summary Judgment filed by MLGW.  Order, R. 111, Page ID #1607. Said Order granted summary judgment on all clams for retaliation, the claim for hostile environment, and the claim based on denial of Russ' request for additional staff and a later start time.  Summary judgment was denied on her claim for a 40-hour work week and her claim for constructive discharge.

On September 12, 2016, MLGW filed its First Motion in Limine Seeking Exclusion of Evidence and Statements of counsel.  First Motion, R. 123, Page ID #1717.

On September 14, 2016, MLGW filed its First Motion for Reconsideration re: Order on Motion for Summary Judgment or for Alternative Relief.  First Motion for Reconsideration, R. 124, Page ID #1723.

On September 15, 2016, Russ filed her Response to MLGW's First Motion for Reconsideration, etc.  Response, R. 124, Page ID #1723.

On September 19, 2016, the court entered its Order Denying Motion for Reconsideration.  Order Denying, R. 129, Page ID #1788.

On September 22, 2016, Russ filed a Motion in Limine Regarding Defendant's Proposed Rule 1006 Summary Exhibits.  Motion re: Rule 1006 Exhibits, R. 134, Page ID #1857.  MLGW responded to said Motion on September 23, 2016.  Response, R. 135, Page ID #1860.

The PreTrial Order was entered by the court on September 26, 2016.  PreTrial Order, R. 136, Page ID #1878.

Trial began on September 26, 23016. Minute Entry, R. 139.  Trial concluded on October 6, 2016.  Minute Entry, R. 147.  On that date the jury returned a verdict in favor of MLGW and against Russ.    Id.  The court entered an Order on Jury Verdict on October 6, 2016.  Order, R. 150, Page ID #1960.  That same day, the court entered Judgment.  Judgment, R. 151, Page ID #1961.

On October 19, 2016, Russ timely filed her Notice of Appeal.  Notice of Appeal, R. 152, Page ID #1962.  The same day she paid the filing fee, and ordered the transcript.

3.    <u>Disposition Below</u>.

On April 21, 2016, the court below granted in part MLGW's Motion for Summary Judgment.  Order R. 111, Page ID #10.

The remaining claims brought by Russ were presented at trial to a jury, which rendered its verdict in favor of MLGW, and against Russ.

Thus the Judgment entered by the court below on October 6, 2016 (Judgment, R. 151, Page ID #1961) is a final judgment. All claims have been disposed of, and final judgment appealable as of right has been entered.

## STATEMENT OF FACTS

Plaintiff began working full-time for MLGW on or about January 17, 1977. Her work performance has always been exemplary. She has always been a dedicated and proud employee of MLGW.

In 2001, she completed the Executive Training Program at MLGW. She was promised the position of Manager of the Personnel Department, in charge of Compensation, once she completed her Master's degree. Affid. Russ, ¶35, R. 91-3, Page ID #1227. In 2003, she obtained a Master's degree in Human Resources from Central Michigan University in Administration. She holds a CCP Certificate. By 2001, she was highly qualified for upper management positions at MLGW.

In February 1999, she was promoted to Supervisor of Compensation, Department of Personnel. She continued in that job title until her last day at work, February 14, 2014, although her Department's name had changed. See Job Description, Exhibit "A" to Plaintiff's Response to Motion for Summary Judgment, R. 91-1, Page ID #1179.

Beginning in May 2008, a position was supposed to be opened for Manager of Compensation. The job description was written (by Plaintiff) and was approved by her Vice President. See Exhibit "B" attached hereto, R.91-1, Page ID #1181; same as

Exhibit "2" to Depo. S. Day, R. 92-7, Page ID #1340;   Depo. J. Russ, pp. 39, 43, 120, R. 93, Page ID #1404, 1405 and 1417; Depo. A. Ward, pp. 19-20, R. 92-1, Page ID #1239.   It was evaluated under the Hay System (which is required before a job is posted).   But the job was never posted, and never added to the organizational chart. Plaintiff had planned to bid on it.   Depo. J. Russ, p. 38, R. 93, Page ID #1403.   She met all the job requirements, and her experience was superior to any other employees within MLGW.   She should have gotten the job.   Id., p. 39. R. 93, Page ID #1404.   Jerry Collins, President and CEO of MLGW, decided not to open the position.   Id., p. 43, R. 93, Page ID #1405.

Her then-Vice President, Dr. Armstead Ward, repeatedly tried each year to get her promoted to Manager of her Department, due to her excellent job performance.   Id. Ward testified the Vice Presidents (hereinafter "VP") did not think it was a good idea. Depo. A. Ward, pp. 23-24, R. 92-1, Page ID #1241.   VP Goodloe told Russ that every year the President,  Jerry Collins, would take Russ' promotion to Manager out of the budget.   Depo. J. Russ, p. 150, R. 93, Page ID #1427.   And he told her not to ask anymore.   Id.

Moreover, for years she was performing work required of Managers at MLGW. She reported directly to a VP.   All other Supervisors reported to a Manager.   Affid. Russ, ¶36, R. 91-3, Page ID #1227.   Supervisor Vickie Fox Price testified that she (Price) has always reported to a Manager, not a VP.   Depo. V. Price, p. 32, R. 92-5, Page ID #1274.

She was asked if any Supervisor at MLGW reported to a VP. Her answer: only Russ. Id., p. 33, R. 92-5, Page ID #1275. As Supervisor of Compensation, Russ was charged with writing job descriptions. She knew the organizational structure of MLGW – every department. Affid. Russ, ¶2, R. 91-3, Page ID #1217. She knew that meetings at the administrative level are ordinarily attended by VP's and some Managers. She was the only Supervisor who did so. Affid. Russ, ¶3, R. 91-3, Page ID #1217.

She had responsibilities towards her staff comparable to other Managers. She regularly attended meetings of Managers and VP's. Id. She participated in Annual Budget meetings, and planning meetings, and dealt with issues normally reserved for Managers and VP's. Depo. S. Day, p. 42, R. 92-7, Page ID #1328. She alone re-wrote the Performance Appraisal forms for the entire company. Id. She was essentially the person at MLGW responsible for writing all job criteria for management positions as well as for hourly positions and craft positions, and for periodically calculating wage increases for every employee in the company (e.g., merit increases for management employees and increases for bargaining unit employees), and as well as cost of living increases for all employees. Id. She further had responsibility to examine and review individual requests for pay increases for employees, including for new hires. When she requested more proof to justify a pay increase, she made many employees (and especially their Managers and VP's) angry. Depo. A. Ward, pp. 38-39, R. 92, Page ID #1249; Affid. Russ, ¶4, R. 91-3, Page ID #1218. She was especially careful to adhere to

9

U.S. Department of Justice guidelines regarding exempt versus non-exempt positions, in compliance with a Consent Decree forced on MLGW by the United States. See, e.g., letter from Jerry Collins to Russ dated November 12, 2008, Exhibit "7" to Depo. J. Russ, R. 93, Page ID #1453.

By the time she became a Supervisor (1999), she was regularly working more than 60 hours per week. Depo. J. Russ, p. 161. She was then performing the job duties of Supervisor of Compensation, plus she was doing research and writing reports for VP's as well as for Managers as they requested them – usually with very short deadlines, typically the next morning. She had approximately 80 requests per year for such reports. Depo. J. Russ, p. 160, R. 93, Page ID #1428. Russ found that the only way she could efficiently and effectively complete the research/reports was to do them after hours, when she had fewer distractions and access to all data. During the daytime, her staff would be working on various projects, and complete data was often not available to her during the day. In addition, many of the projects requested by the VP's required confidentiality and discretion on the part of Russ, because the data needed included salaries and wages, Hay point evaluations, and salary evaluations in other companies. Depo. J. Russ, pp. 28-29, R. 93, Page ID #1397.

From July 2003 to September 2006, Russ was designated as the MLGW employee representative to work on the Oracle Project, a computer software program which MLGW had purchased. Said software required significant alterations in order to do

what MLGW needed it to do.  Joanne Russ was MLGW's spokesperson for Oracle, and was responsible to make Oracle compatible with MLGW's needs.  It was a full-time commitment.  She was the only full-time MLGW employee working on Oracle.  Depo. J. Russ, p. 111, R. 93, Page ID #1416.  But Russ found that she had to go back to the Compensation offices nearly every day, because in her absence the work was not being done, and there were many problems with errors.  She would work all day on Oracle at the Netters Building (Whitten Road), then go back to the Administration Building (downtown) to straighten out Compensation problems until late into the evening - night after night.  Depo. J. Russ, pp. 67-68, R. 93, Page ID #1408.

Before going to Oracle, Russ had been promised a bonus (or incentive pay) for working on the Oracle Project.  Affid. Russ, ¶34, R. 91-3, Page ID #1226.  VP Linda Peppers, wrote a contract promising the bonus to Russ.  Peppers described it as a "letter" regarding incentive pay.  Depo. L. Peppers, pp. 23-24, R. 92-5, Page ID #1272.  Russ later learned that certain VP's would not sign it.  She was afterward promised by her then VP  (Ward) that she would be paid the bonus, which promise was repeated over several years, as late as 2013, but never was paid.  She had been promised a promotion to Manager of Compensation once she completed her Master's Degree, which occurred in 2003.  Affid. Russ, ¶33, R. 91-3, Page ID #1226.  That did not happen.

In 2006, she was recalled to Compensation from the Oracle Project by her VP, Ward.  He was aware that the Acting Supervisor's work was inferior, and that Russ was

11

urgently needed.  Depo. A. Ward, p. 18, R. 92-1, Page ID #1238.  Ward relied heavily on Russ.  He testified:  "Russ was the authority on Oracle."  Id., p. 20, R. 92-1, Page ID #1240.

When she returned to her Department in 2006, she once again was working very late hours, often until 2:00 or 3:00 a.m. on special reports.  Plus she continued performing her regular duties as Supervisor of Compensation and HRIS.[1]  Russ did not voluntarily decide to work 60 plus hours each week.  That is what had to be done to complete assignments.  Affid. Russ, ¶5, R. 91-3, Page ID #1218.  She reasonably asked for more professional staff, in order to reduce her workload.  That request was repeatedly refused.  Id.  Upon her return her Department had been re-named to include HRIS.  Id.  She no longer reported to the Manager of Personnel.  That title was vacant. She reported directly to VP of Human Resources.  Her Department was renamed "Compensation and HRIS," part of Human Resources.  And Compensation/HRIS had no Manager.  The top person in the Department was Russ, still a Supervisor.

She continued to ask for the promised promotion to Manager, and for the promised project pay.  This occurred every year, and continued into August, 2013, when the budget proposal for her Department included the Manager position and the long-promised bonus pay for Oracle.  Affid. Russ, ¶7, R. 91-3, Page ID #1218.

---

1  HRIS stands for Human Resources Information System, a reference to the Oracle software.  Thus Russ' position expanded to cover two areas:  Compensation and HRIS.  Her duties expanded, with no commensurate adjustment in her salary.  Affid. Russ, ¶6, R. 91-3, Page ID #1218.

12

After several years of working extremely hard, with long hours and high stress, Russ' health began deteriorating.  She suffered daily from harassment from upper management.  In March 2007, she was diagnosed with Diabetes Type 2.  In July 2009, she had a stroke, which affected the left side of her brain.  She realized upon return to work after her stroke that she had memory problems, that she could no longer multi-task.  She  had trouble getting her words out.  She got confused easily, and frustrated easily.  If she got upset, or confused, or frustrated, her blood pressure went up.  Affid. Russ, R. 91-3, Page ID #1221.   She was on sick leave from July 2009 until October 2009.  She gave MLGW notice of her health problems, and paperwork from her treating doctors, which initially included limitations or requested accommodations:  no work beyond 40 hours per week, and eight hours of sleep at night.  Later the doctor additionally asked that her work schedule start at 9:30 a.m., that Russ must avoid unnecessary stress.

Her Acting VP of Human Resources, Steve Day, sent a letter to Russ' doctor on November 10, 2009 asking him to explain why Russ could not work more than 40 hours per week.  Exhibit "2" to Depo. Dr. McEwan, R. 92-6, Page ID #1315.  Said letter violated the ADAA, the FMLA and HIPAA.  He knew Russ was having problems with memory, that she had headaches, that she could not multi-task.  Depo. S. Day, p. 47, R. 92-7, Page ID #1331.  Day normally did not send letters to doctors about employee issues.  He enclosed no written authorization from Russ to authorize Dr. McEwan to respond to his letter.

13

MLGW repeatedly refused to accommodate Russ' medical disabilities.  She was not allowed to reduce her hours to 40 per week.  Her workload was not reduced.  The work pressures kept building.  Affid. Russ, R. 91-3, Page ID #1218, 1219, 1220, 1221, 1222, 1224.  In February 2013, she was given an oral reprimand by her VP because she was 15 minutes late to a meeting, due to a doctor's appointment for her husband.  Affid. Russ, ¶8, R. 91-3, Page ID #1219.  This oral reprimand from V. Goodloe was undeserved.  He kept pressuring Russ to produce the reports, knowing she had to do them late at night, and to continue managing the Department.

Thus when Russ learned of what had happened in the August 27, 2013, Annual Budget Review Committee Meeting, she filed an internal EEO Complaint.  Exhibit "1" to Depo. J. Russ, R. 93, Page ID #1445.  Russ concluded that Jerry Collins' (President of MLGW) statement at that meeting contending she was "never at work" was retaliatory on account of her 2009 request for accommodation due to her disabling condition, and deeply embarrassed and humiliated her.  Id.  She learned Collins was discussing replacing her, and wanted Russ to train her replacement.  Her start time was set by the VP – something that had never been imposed on her in her many years at MLGW.  Id., Affid. Russ, ¶9, R. 91-3, Page ID #1219.

Her doctor, in November 2013, asked that Russ be allowed to start work no earlier than 9:30 a.m. to avoid high traffic and resulting stress.  Exhibit "3" to Depo. Dr. McEwan, R. 92-6, Page ID #1316.  That additional accommodation was again refused.

14

He also repeated that she needed to reduce her time at work, to 40 hours per week or less. Id. This accommodation was again refused. See also Exhibit "5" to Depo. Dr. McEwan. R. 92-6, Page ID #1318. No matter what the doctor replied to MLGW, or requested as a necessary accommodation, they refused. The date of final refusal was January 27, 2014. Depo. J. Russ, Exhibit 32, R. 93, Page ID #1474. Russ shortly thereafter filed her charge with the U.S. Equal Employment Opportunity Commission on February 11, 2014, Charge No. 490-2014-00611. Complaint, Exhibit "A," R. 1, Page ID #22. Thus the 300-day period prior to filing the charge started on April 18, 2013.

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment on Russ' claims of retaliation, hostile environment and denial of accommodation requesting a later start time.

The district court for it lacked jurisdiction because the charge did not recite certain language regarding hostile environment, and the charge alleged only retaliation under the ADAA, not Title VII. Whereas the Complaint alleged retaliation under Title VII and not the ADAA. These conclusions are not correct. Russ alleged retaliation correctly as her charge, and checked the retaliation box. Her Complaint alleged discrimination on the basis of disability (ADAA) and included retaliation. The charge was drafted by the EEOC while Russ was pro se.

15

The district court's conclusions regarding Russ' claim for denial of accommodation for a later start time is likewise incorrect as a matter of law. This accommodation was reasonable because it would have allowed her to perform her work, not the work of others.

Lastly, Russ asserts that jury was repeatedly told that the district court had dismissed her retaliation claim yet evidence of her retaliation allegations permeated the trial. They just kept creeping into evidence – both in exhibits, in testimony and even the opening statement of MLGW. This was tremendously prejudicial to Russ. And the court's rulings did not cure the problem; and the errors were not harmless.

## ARGUMENT

### I. The District Court Erred in Granting Summary Judgment on Russ' Claims of Retaliation, for Hostile Environment and for Denial of Accommodation Request for a Later Start Time.

Standard of Review:  A district court's grant of summary judgment is reviewed de novo.  Hughes v. Vanderbilt University, 215 F.3d 543, 547 (6th Cir. 2000).

Fed. R. Civ. P. Rule 56(a) provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Court of Appeals reviews the district court's legal conclusions and its grant of summary judgment de novo, using the same Fed.R.Civ.P. 56(c) standard as the district court.  Taylor v. Geithner, 703 F.3d 328, 332 (6th Cir. 2013); Int'l Union v. Cummins,

Inc., 434 F.3d 478, 483 (6th Cir. 2006);  Appalachian Res. Dev. Corp. v. McCabe, 387 F. 3d 461, 463 (6th Cir. 2004); Johnson v. Econ. Dev. Corp., 241 F.3d 501, 509 (6th Cir. 2001).

The movant for summary judgment has the burden of establishing that there are no genuine issues of material fact by demonstrating that the non-moving party lacks evidence to support an essential element of its case.  *Charles A. Wright*, *et al.*, *Federal Practice and Procedure* §2727, at 35 (2d Ed. 1998); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); Logan v. Denny's Inc*.,* 259 F.3d 558, 566 (6th Cir. 2001).    Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001).   All reasonable inferences must be drawn in favor of the non-movant. Klepper v. First American Bank, 916 F.2d 377 (6th Cir. 1990).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleadings, but… must set forth specific facts showing that there is a genuine issue for trial."  Fed. R.Civ.

Pro. 56(e).  "A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party." <u>Doren v. Battle Creek Health Sys.</u>, 187 F.3d 595, 597 (6th Cir. 1999).  The non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." <u>Moore v. Philip Morris Cos.</u>, 8 F.3d 335, 339-40 (6th Cir. 1993).  "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  The Judge's function "is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Id.</u>, at 249.  The evidence of the non-movant is to be believed.  <u>Entertech Elec. Inc. v. Mahoning County Com'rs</u>, 85 F.3d 257, 259 (6th Cir. 1996).  All justifiable inferences are to be drawn in that party's favor.  <u>Anderson</u>, 477 U.S. at 249-50. Summary Judgment is inappropriate where sufficient evidence exists on the record such that a reasonable jury could find for the non-movant.  <u>Donald v. Sybra, Inc.</u>, 667 F.3d 757, 760-61 (6th Cir. 2012).

Russ asks this court to compare the standards of review set forth above to those enunciated by the district court below, which emphasize a very negative view for the non-moving party.  Order, R. 111, Page ID #1615-1616.  Russ agrees that there is no mis-statement of law therein.  But the court's version emphasizes the burden on the non-

movant in dramatic contrast to the cases relied on by Russ.  It does not provide that the evidence of the non-movant is to be believed, or that all justifiable inferences are to be drawn in the non-movant's favor.  It does not remind that the judge's function is not to weigh the evidence, etc.

The differences between the two statements of law are significant.  The district court's version reflects the court's mind-set.  Its version is essentially not a correct statement because it omits significant aspects of the summary judgment inquiry, and it tends to favor the movant.

The district court in the instant case found that there was no federal question jurisdiction under 28 U.S.C. §1331 because Russ' EEOC charge was filed only for retaliation under the ADAA, not Title VII.  A true and correct copy of her charge may be found as Exhibit "A" to her original Complaint.  Exhibit "A," Charge, R. 1, Page ID #22.  Said charge was drafted by the EEOC, at a time when Russ was proceeding pro se. She did not retain an attorney until April 23, 2014.

Russ concedes that her charge (No. 490-2014-00611) does not mention hostile environment in violation of the ADAA.  It does specifically mention retaliation in violation of the Americans with Disabilities Act as amended (ADAA).  The retaliation box is checked.  The disability box is checked.

The district court relies primarily on Younis v. Pinnacle Airlines, Inc., 610 F.3d 359 (6th Cir. 2010).  Even Younis agrees that where an aggrieved employee files her

charge, her pro se complaints in the charge are to be construed liberally.  Courts may also consider claims that are "reasonably related to or grow out of the factual allegations in the EEOC charge."  <u>Younis</u>, 610 F.3d at 362, citing <u>Davis v. Sodexbo</u>, 157 F.3d 460, 463 (6th Cir. 1998).  The Sixth Circuit shortly after the <u>Younis</u> decision distinguished another case from <u>Younis</u>, and found that the EEOC charge clearly and explicitly set forth the plaintiff's retaliation claim and provided the EEOC and the employer with notice of the retaliation claim.  <u>Spengler v. Worthington Cylinders</u>, 615 F.3d 481, 490 (6th Cir. 2010).  This court should do likewise.

In another case, this one from the Eastern District of Michigan, the district court distinguished its case from <u>Younis</u>, finding that in <u>Younis</u> the plaintiff did not check the retaliation box, but in its case the plaintiff had checked the box.  <u>Ling v. Twp. of Richland</u>, 2015 U.S. Dist. LEXIS 139957 (ED MI 2006).  The <u>Ling</u> court held that the rule enunciated in <u>Younis</u> "is not a formalistic one but is one based on notice."  <u>Ling</u>, page number unknown.  In the instant case, Russ had checked the retaliation box, just as the plaintiff had done in <u>Ling</u>.  Russ not only checked the retaliation box.  She set forth her earlier (2009) protected activity (requesting an accommodation for her disabling condition).  She then alleged specifically retaliation under the ADAA.  Thus Russ' claims for retaliation should not be dismissed.

To put all these cases into context:  Russ was pro se when her charge was filed.  The charge includes two boxes having been checked:  retaliation and disability.  The

charge reflects that she had earlier requested accommodation due to disability under the ADAA, and that she was repeatedly retaliated against on account of that request. The charge clearly sets forth that on November 20, 2009, she requested an accommodation (work 40 hours per week). The charge further reflects a request for accommodation (to have her report time changed to 9:30 a.m.) on October 18, 2013. The charge further alleges that she requested additional staff following the August 2013 budget meeting.

Russ contends that the ADAA includes an anti-retaliation provision. 42 U.S.C. §12101 *et seq* at Title V. But it contains no remedies. Courts have found that the employees' remedies under Tittle V are "coextensive" with remedies for employment discrimination under Title VII. It is therefore entirely appropriate for Russ to allege retaliation under both the ADAA and under Title VII. See <u>Rumler v. Dep't of Corr</u>., 546 F. Supp. 2d 1334, 1342 (USDC FLA. 2008) (remedies under 42 U.S.C. §1981a are available to claimants under the ADAA).

The district court in the instant case stated:

> To establish jurisdiction over a claim for hostile work environment the plaintiff must allege in the EEOC filing "harassment that unreasonably interferes with [her] work performance and creates an objectively intimidating, hostile, or offensive work environment." <u>Younis</u>, 610 F.3d at 362.

Order, p. 12, R. 111, Page ID #1607.

Russ contends that <u>Younis</u> does not require this explicit language in an EEOC charge. A close examination of page 362 of <u>Younis</u> supports Russ' position. It says

21

instead that a plaintiff must <u>present</u> evidence of such harassment, it does not say this language must be explicitly included, citing <u>Grace v. USCAR</u>, 521 F.3d 655, 678 (6th Cir. 2008).

Plaintiff's charge should be construed liberally. Any reasonable reading of said charge would allow a conclusion that the charging party had been subjected to a hostile environment. Russ relied on the EEOC intake person to write her charge. She did not know that there was any magic language that needed to be included. In actuality she had a long history of protected activity, as set forth in her original Complaint. Complaint R. 1, Page ID #1. See especially ¶18, which alleges daily harassment by upper management which was both severe and pervasive. <u>Id</u>., Page ID #6. See also ¶¶30-36. <u>Id</u>., Page ID #9-10.

Lastly, Russ contends that her claims of retaliation, clearly set forth in her charge, should survive. Retaliation includes the severe harassment from her supervisors.

The major point which Russ seeks to make is that the district court's order sets a too strict or rigid standard for an EEOC charge, on both retaliation and hostile environment, far more rigid than what is required. As the <u>Ling</u> decision holds, the issue should be one of notice, not a required formulary or definition of hostile environment, or of retaliation.

This court should reverse the district court, and remand for trial on the claims of retaliation and hostile environment.  The district court clearly had federal question jurisdiction over these claims.

## II.    Request for Additional Staff Was a Reasonable Accommodation.

This issue is likewise part of the first issue but Russ expands her discussion to explain why additional staff under the facts and circumstances of this case is a reasonable accommodation.

Russ contends that MLGW should have granted her request for three additional staff.  This would have relieved some of the pressure on her to work more than 40 hours per week.  The issue should not be seen as a request to re-assign existing employees, or to hire new employees to perform the plaintiff's functions, as set forth in <u>Bratten v. SSI Services, Inc</u>., 185 F.3d 625, 632-33 (6th Cir. 1999).  The problem in the instant case is that the Compensation Department (Russ' staff) was woefully short-staffed.  The need for additional staff was recognized.

One witness (Russ' Vice President, Von Goodloe) testified that he was aware that Russ' work group needed additional cross-training, that there was a proficiency gap.  He said Russ was talented, and detail-oriented.  He described her staff as having "non-ability to complete something."  Depo. V. Goodloe, pp. 21-22.  Depo. R. 92-9, Page ID #1363.  He agreed that Russ' request for additional staff was "a necessary request."  <u>Id</u>., p. 52.  R. 92-9, Page ID #1375.  He approved the request, but it was cut by the Budget

Committee.  Id., p. 53.,  R. 92-9, Page ID #1376.  Goodloe's evaluation of Russ for 2013 shows his appreciation of her competency and her hard work and talent.  Exhibit 1 to Depo. V. Goodloe R. 92-9, Page ID #1387.

Russ contends that the additional staff was needed by her department, as admitted by her Vice President.  She contends that the request would have relieved her of great stress, not because of her "essential functions" of her position, but because she was doing work which should have been done by her staff.  Her request was reasonable, and it would have accommodated her disabling condition.

The ruling of the district court on this issue should be reversed, and the issue of whether additional staff was a reasonable accommodation should be decided by a jury.

## III.  District Court's Ruling on Retaliation Permeated the Trial, and Lead to Numerous Evidentiary Problems.

### STANDARD OF REVIEW

Evidentiary rulings are reviewed for abuse of discretion.  GE v. Joiner, 522 U.S. 136, 141-42, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (citing Old Chief v. U.S., 117 S. Ct. 644, 136 L. Ed. 2D 574 (1997).  Reversal is appropriate only if the "abuse" was not harmless "error."  Error is harmless if the reviewing court is satisfied "that the outcome of a trial was not affected by evidentiary error."  US v. Johnson, 440 F.3d 832, 847 (6th Cir. 2006)  (quoting McCombs v. Meijer, Inc., 395 F.3d 346, 358 (6th Cir. 2005), cert. denied, 127 S. Ct. 48 (2006).

The numerous evidentiary problem raised by the district court's grant of summary judgment on Russ' claim of retaliation permeated the trial and resulted in inclusions and/or exclusions of evidence that were not harmless error. Indeed this reviewing court should be satisfied that the outcome of the trial was affected by the court's handling of evidentiary issues.

From the very start of trial, in MLGW's opening statement its attorney showed the jury a copy of Russ' EEOC charge containing her allegation of retaliation, and the checked boxes (retaliation and disability). Opening Statement for MLGW, Transcript, Vol. I, p. 107 (September 26, 2016), Page ID #3282. He proceeded to tell the jury repeatedly that the judge had already ruled that certain requests for accommodation were "not a violation.," Id.; see also top of p. 108, Page ID# 3283.

Counsel for Russ requested that the court give a curative instruction, that it is not for the jury to determine why the court made certain rulings. Id., p. 123, Page ID #3298. Russ' attorney concedes she could have interrupted MLGW's opening statement. But to do so invites tremendous criticism. Such interpretations are normally considered rude and impertinent. They do not prevent the harm being done, but instead accentuate it. The court below noted that MLGW chose to "put up the charge." Id. at Page ID #3298. The court had a concern that the jury was being told that the judge had already "knocked all these things out..." Id. at Page ID #3299.

25

When the trial resumed on September 27, 2016, the judge addressed the jury, and made a brief statement.  See Transcript, Vol II, Page ID #3311.  The judge did not give a curative instruction.  He by-passed the issue raised by Russ' attorney.  The most he said on the issue was:  "Anything I may have ruled or decided before the case began, you can ignore that..."  Id.

As the trial progressed, the intertwining of issues kept coming up. As Judge Mays put it:  "The problem we have is, although there is only one issue before the jury, all the issues are one claim before the jury.  All the issues are intertwined.  That's as the proof has evolved."  Id., Page ID #3608.

This statement was made by the judge during a side-bar on evidence regarding tardiness, and the issues of from what date MLGW could introduce evidence of tardiness, and where does it stop.  Id., Page ID #3609.  Russ' attorney expressed concern that evidence of tardiness going back to 2002-2003 would lead to issues regarding an EEOC charge Russ had filed against her supervisor from that period.   Id., Page ID #3613.  Essentially Russ was trying to follow the court's ruling on summary judgment. And she was concerned about jury confusion and prejudice, under F.R.E. Rule 403. The court ruled that MLGW could introduce three (3) reprimands regarding tardiness, plus the February 2013 oral reprimand.  Id., Page ID #3616.

Then the MLGW attorney asked Russ:  "Is it true that in your opinion all of your various supervisors and people...have they all been mistaken about you?..."  Id., Page ID

26

#3642.  In her response, Russ brought up her supervisor from 2002-2003, the very topic the district court had wanted to avoid.  <u>Id</u>.  Thus the testimony regarding Tommy Dunagan came in, including that "[h]e was told never to be my supervisor again...and we had to go and file EEOC charges to get him to stop…  So, that's really the only person that had – I had problems with, with my tardiness..."  Testimony of Russ, Transcript, Vol. II, p. 467, R. 164, Page ID #3642.

Russ' attorney tried to object, and the court overruled her.  <u>Id</u>., Page ID #3643.

Interestingly, MLGW never produced at the trial the promised "two or three" reprimands for tardiness pre-dating February, 2013.

In other portions of the case, MLGW wanted to use Russ' Amended Complaint as an exhibit.  <u>Id</u>., Page ID #3685.  Counsel reached an agreement, that paragraphs 32, 34, the first sentence of paragraph 37, and all of 38 could be read to the jury.  The court noted:  "If you make that amended complaint an exhibit, you've going to have some significant problems."  <u>Id</u>., Page ID #3687.

When MLGW's attorney read paragraph 33 to the jury, Russ responded:  "No." To which Mr. Belz asked:  "That's not accurate, is it?"  And Ms. Russ responded by reading paragraph 33 as it was stated in the Amended Complaint, meaning it included the word "retaliation."  <u>Id</u>., Page ID #3690-3691.  Mr. Belz next asked:  "Now, we understand, don't we, that the word "retaliation" is no longer in this case...don't we?" <u>Id</u>.

Russ contends that the evidentiary rulings by the district court constituted an abuse of discretion. This is not a matter of harmless error. Russ believes that the entire case was tried in such a way that the court's pre-trial rulings permeated the case, to her prejudice.

Retaliation as a concept, as a recognized word, and as an integral part of Russ' claims continued to arise throughout the trial. This became evident even in opening statement. It was evident when the EEOC charge was admitted into evidence. It was part and parcel of MLGW's defense that Russ was charged repeatedly with tardiness, albeit the evidence was never produced.

The court below struggled with the issue of how to try the case without mention of retaliation, either in exhibits or in testimony. No matter how the court dealt with the issue, it became predominant throughout the trial, to such extent that a reasonable person can only conclude that it affected the jury's rulings.

## **CONCLUSION**

For the reasons stated, Appellant respectfully ask the Court to reverse the decision of the district court in granting summary judgment on the issues of (1) Whether the district court erred in granting summary judgment on Russ' claims of retaliation, for hostile environment and for denial of accommodation request for a later start time; (2) whether request for additional staff was a reasonable accommodation; (3) whether the district court's ruling on retaliation permeated the trial, and lead to numerous evidentiary

problems, to reverse the decision of the jury.  This matter should be remanded for trial before another jury.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

*s/Kathleen L. Caldwell, #9916*
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:  (901) 458-4037
*kathleencaldwell.attorney@gmail.com*

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a), I hereby certify that this brief complies with the type-volume limitations of Rule 342(a)(7)(B)(i) of the Federal Rules of Appellate Procedure.  The brief contains 7,043 words.  The brief was prepared in Times New Roman Style using font size 14.

*s/Kathleen L. Caldwell*
Kathleen L. Caldwell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Appellant's Proof Brief has been electronically filed and electronically served on:

> **Saul C. Belz, Esq.**
> **Michael D. Tauer, Esq.**
> **Miska L. Shaw, Esq.**
> **6000 Poplar Avenue, Suite 400**
> **Memphis, TN 38119**

This 3rd day of April, 2017.

<u>*s/Kathleen L. Caldwell*</u>
Kathleen L. Caldwell
Certifying Attorney

**NO. 16-6570**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**JOANNE P. RUSS,**

**Plaintiff-Appellant,**

**v.**

**MEMPHIS LIGHT GAS & WATER DIVISION,**

**Defendant-Appellee.**

---

**APPELLANTS' DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS AND EXCERPTS**

---

| RECORD ENTRY | DESCRIPTION | PAGE ID RANGE |
|---|---|---|
| 1 | Complaint | 1-12 |
| 17 | Motion to Strike | 51-53 |
| 18 | Answer | 59-70 |
| 23 | Notice of Correction | 76-77 |
| 24 | Amended Motion to Strike | 79-80 |
| 30 | Response in Opposition | 98-100 |
| 31 | Motion to Dismiss | 109-111 |
| 34 | Motion to Amend/Correct | |

| | Proposed Order | 124-125 |
|---|---|---|
| 35 | Order | 139 |
| 36 | Amended Complaint | 140-152 |
| 37 | Response | 153-155 |
| 38 | Answer | 161-173 |
| 39 | Order | 174-182 |
| 48 | Notice | 196-197 |
| 55 | Motion in Limine | 209-215 |
| 56 | Response | 216-218 |
| 59 | Reply | 223-227 |
| 81 | Motion for Summary Judgment | 316-317 |
| 91 | Response in Opposition | 1134-1135 |
| 92 | Notice | 1234-1235 |
| 92-1 | Depo. A. Ward | 1238, 1239, 1240 1241, 1249 |
| 92-5 | Depo. V. Price | 274, 1275 |
| 92-5 | Depo. L. Peppers | 1272 |
| 92-6 | Depo. Dr. McEwan | 1315, 1316, 1318 |
| 92-7 | Depo. S.  Day | 1328, 1331, 1340 |
| 92-9 | Depo. V. Goodloe | 1363, 1375, 1376 1387 |

| | | |
|---|---|---|
| 93 | Depo. Russ | 1397, 1403, 1404 1405, 1408, 1416, 1417, 1427, 1428, 1445, 1453, 1474 |
| 94 | Reply | 1475-1496 |
| 95 | Order | 1498-1507 |
| 99 | Proposed Pretrial Order | 1527-1563 |
| 100 | Motion in Limine | 1564-1568 |
| 101 | Motion in Limine | 1569-1573 |
| 102 | Motion in Limine | 1574-1578 |
| 103 | Motion in Limine | 1579-1583 |
| 104 | Motion in Limine | 1584-1589 |
| 105 | Motion in Limine | 1590-1583 |
| 108 | Response | 1600-1602 |
| 111 | Order | 1607-1641 |
| 123 | First Motion | 1717-1721 |
| 124 | First Motion for Reconsideration | 1723-1728 |
| 129 | Order Denying | 1788-1796 |
| 134 | Motion re: Rule 1006 Exhibits | 1857-1859 |
| 135 | Response | 1860-1865 |
| 136 | Pretrial Order | 1878-1907 |

| 150 | Order | 1960 |
|-----|-------|------|
| 151 | Judgment | 1961 |
| 152 | Notice of Appeal | 1962-1963 |

**TRIAL TRANSCRIPT EXCERPTS**

| | Opening Statements (MLGW) | 3282, 3283 |
|--|---------------------------|-----------|
| | Russ' Attorney: | 3298, 3299 3613, 3616 3643 |
| | Judge | 3311, 3608 3609, 3687 |
| | MLGW Attorney: | 3642, 3685 3690-3691 |
| | Testimony of Russ | 3642, 3690- 3691 |